**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| **Lisa C. Davis,** | ) | Case No. 08 B 16025 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

This Chapter 13 case is before the court on the debtor's motion to modify her confirmed plan. The motion seeks to make two changes in the plan—lowering the monthly payment to creditors and reducing the payment period. The trustee has objected, arguing that the debtor failed to show that either change is permitted under § 1325(b) of the Bankruptcy Code (Title 11, U.S.C.). A major issue in dispute is whether § 1325(b) applies to motions to modify a confirmed plan. As discussed below, it does not. The only relevant requirements for approval of a motion to modify are set out in § 1325(a), and the proposed plan satisfies them. The debtor's motion will therefore be granted.

**Jurisdiction**

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, 28 U.S.C. § 1334(a), and they may refer these cases to the bankruptcy judges for their districts, 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has done so. N.D. Ill. Internal Operating Procedure 15(a). This reference gives bankruptcy judges jurisdiction under 28 U.S.C. § 157(b)(1) to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." A proceeding regarding the modification of a Chapter 13 plan is a core proceeding. 28 U.S.C. § 157(b)(2)(A) & (O).

**Factual Background**

The relevant facts are not in dispute.  Lisa Davis filed a Chapter 13 bankruptcy case on June 21, 2008.  (Docket No. 1.)  At the time, she was married with one child and had a gross monthly income of $7,709—more than the median income in Illinois for a family of that size[1]—as reflected on Schedule I accompanying her petition.  (*Id.*)  In Schedule J, Davis deducted her current expenses from this income, leaving $1,203 that could be devoted to Chapter 13 plan payments.  (*Id.*)  Davis also submitted Official Form 22C (Docket No. 5), in which she calculated $312 in projected "disposable income."  Under § 1325(b) of the Code, Davis could have been required to pay this disposable income to her unsecured creditors for each month of her plan's "applicable commitment period," unless the plan paid these creditors in full earlier.  Because of her above-median income, the "applicable commitment period" for Davis's plan under § 1325(b)(2) was sixty months.

On August 22, 2008, Davis proposed a plan that drew objections, and she later filed an amended plan proposing full payment of unsecured claims through fifty-four monthly payments of $740.  (Docket No. 27.)  This plan generated no objections and was confirmed on September 18, 2008.  (Docket No. 31.)

After the plan was confirmed, however, Davis lost her job and separated from her husband, leaving her with only child support and unemployment compensation as sources of income.  (Docket No. 41, ¶ 4.)  On January 25, 2010, Davis moved to modify her plan.  (Docket No. 41.)  According to the amended Schedules I and J that she filed

---

[1] At the time of her bankruptcy filing, the median income for a family of three in Illinois was $66,607, or $5,501 monthly. *See Census Bureau Median Family Income By Family Size*, U.S. Dep't of Justice, http://www.justice.gov/ust/eo/bapcpa/20080317/bci_data/median_income_table.htm (last visited December 15, 2010).

2

with her motion, Davis's gross monthly income was then $3,064—less than the then-applicable median for a family of two[2]—and her net monthly income was $250. Her motion seeks to reduce the amount of monthly plan payments to $250 and to shorten the length of the plan from fifty-four months to thirty-six months.

The standing trustee has objected to this proposed modification, arguing both that the payment amount and plan length fail to comply with § 1325(b) and that the modification is inequitable. Davis has responded that (1) that § 1325(b) does not apply to motions to modify Chapter 13 plans; (2) that in any event, her proposed plan modification would comply with that subsection; and (3) that the modification meets any other requirements for approval.

Ruling on the motion was continued until after the decision of the Supreme Court in *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010).

**Conclusions of Law**

A. *The non-applicability of § 1325(b) to proposed modified plans*

The trustee's objection to the debtor's motion is based primarily on § 1325(b). That subsection, though lengthy, does no more than allow an objection to confirmation of a debtor's Chapter 13 plan if the plan does not provide minimum payments to unsecured creditors. The subsection states in part that if a trustee or unsecured creditor objects, a Chapter 13 plan may only be confirmed if it provides for unsecured claims either to be paid in full or with "all of the debtor's projected disposable income to be received in the applicable commitment period." 11 U.S.C. § 1325(b)(1)(B). The

---

[2] At the time of the Davis's motion to modify, the median income for a family of two in Illinois was $60,052 or $5,004 monthly. *See Census Bureau Median Family Income By Family Size*, U.S. Dep't of Justice, http://www.justice.gov/ust/eo/bapcpa/20091101/bci_data/median_income_table.htm (last visited December 15, 2010).

3

debtor's proposed plan modification in this case would not pay unsecured claims in full, and so—if § 1325(b) applied—the modified plan would have to pay unsecured claims with all of the debtor's "projected disposable income" to be received during the "applicable commitment period." The trustee argues that the plan does not do so.

The debtor contends that her plan modification does meet the requirements of § 1325(b), but her first argument is that § 1325(b) does not apply here, so that the merits of the trustee's § 1325(b) objection need not be reached. The debtor's position is that § 1325(b), providing only for objections to confirmation, has no application to modification of a previously confirmed Chapter 13 plan.

Although this question has divided the courts, the debtor's reading of the provision is the better one. In any question of statutory construction, the plain language of the statute must be followed in the absence of compelling contrary indications. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). For three reasons, the relevant statutory language, read fairly, indicates that § 1325(b) does not apply to modification of confirmed plans.

1. *The language of § 1325(b) itself does not apply to plan modification.* By its terms, § 1325(b) comes into effect only when a party with standing objects to "confirmation of the plan," and so the subsection only has direct application to plan confirmation. However, a plan is "confirmed" only once in a Chapter 13 case. Modifying a confirmed plan under § 1329 does not involve another "confirmation"; rather, § 1329(b)(2) simply provides that unless the court "disapproves" the modification, "the plan as modified becomes the plan." *See Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 188 (B.A.P. 8th Cir. 1997) ("The Bankruptcy Code does not provide for the 'confirmation' of a modified plan; rather, the plan as modified becomes the plan if it is not dis-

4

approved."). Because the objection allowed by § 1325(b) applies only to confirmation of a plan, the terms of § 1325(b) itself do not apply to proposals to modify a previously confirmed plan.

2. *Section 1325(b) is not made applicable to plan modification through § 1329.* In providing for modification of a confirmed plan, § 1329 expressly includes only the confirmation requirements of § 1325(a) and does not include the provisions of § 1325(b). Specifically, § 1329(b)(1)—the critical provision here—lists four provisions of Chapter 13 that "apply to any modification under subsection (a) of this section": § 1322(a), § 1322(b), § 1323(c), and "the requirements of section 1325(a)."[3]

By specifying only these four provisions, § 1329(b) implicitly excludes other provisions, under the maxim *expressio unius est exclusio alterius. See TRW v. Andrews,* 534 U.S. 19, 28 (2001) (applying the maxim to reject an unstated exception to a statute of limitations). Most of the reported decisions addressing the issue have accordingly held that § 1325(b) does not apply to modification of a confirmed plan. *See Fridley v. Forsythe (In re Fridley),* 380 B.R. 538, 543 (B.A.P. 9th Cir. 2007); *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005); *Forbes,* 215 B.R. at 191-92; *In re White,* 411 B.R. 268, 272-73 (Bankr. W.D.N.C. 2008); *In re McCully,* 398 B.R. 590, 592-94 (Bankr. N.D. Ohio 2008); *In re Kidd,* 374 B.R. 277, 282 (Bankr. D. Kan. 2007); *In re Ewers,* 366 B.R. 139, 141-42 (Bankr. D. Nev. 2007).

Other decisions disagree, holding that the list of applicable provisions in § 1325(b)(1) is not exclusive. *See In re King,* No. 05-37043, 2010 WL 4180625, at *4

---

[3] The last of these inclusions provides another indication that plan modification under § 1329 does not involve "confirmation". The apparent reason that § 1329(b)(1) incorporates only "the requirements of § 1325(a)" rather than all of § 1325(a) is that § 1325(a) directs a court to "confirm" a Chapter 13 plan if the requirements included in the subsection are met. By incorporating only the "requirements" of § 1325(a), § 1329(b)(1) avoids incorporating a direction to "confirm" a proposed plan modification.

5

(Bankr. S.D. Ill. October 20, 2010); *In re Heyward,* 386 B.R. 919, 924-26 (Bankr. S.D. Ga. 2008); *In re Slusher,* 359 B.R. 290, 301 (Bankr. D. Nev. 2007); *In re Baxter,* 374 B.R. 292, 296 (Bankr. M.D. Ala. 2007). The two arguments that these contrary decisions advance, however, are not persuasive.

The first argument is that because § 1329(b)(1) expressly makes applicable to plan modification "the requirements of section 1325(a)," and because § 1325(a) itself states that it applies "[e]xcept as provided in subsection (b)," § 1325(b) must be one of the "requirements" of § 1325(a). *See, e.g., King,* 2010 WL 4180625 at *4. This reading is not persuasive. Section 1325(a) is a straightforward directive: "the court shall confirm a plan" if each of the nine statements thereafter set out in § 1325(a) applies to the case. These nine statements are indeed "requirements" for confirmation. A "requirement" is "a requisite or essential condition," *see* Webster's Third New International Dictionary 1929 (1981), and the application of each of the nine statements is a prerequisite for plan confirmation under § 1325(a), *see In re Jones,* 530 F.3d 1284, 1290 (10th Cir. 2008) ("[T]he conditions specified in § 1325(a) are clearly mandatory requirements.").

In contrast, § 1325(b) is not a "requirement." Rather than a prerequisite for confirmation, § 1325(b) is an exception to the confirmation that § 1325(a) otherwise mandates. Section 1325(a) states that courts must confirm a plan that meets its nine requirements; § 1325(b) has the potential for preventing that result. Nothing in § 1325(b) is required for confirmation. No party is required to object to confirmation under that subsection, and even if grounds for objection are present, a plan may be confirmed if the objection is not made. *See In re Storey,* 392 B.R. 266, 273 (B.A.P. 6th Cir. 2008) ("If no objection to confirmation is interposed, the plan may be confirmed regardless of 'the applicable commitment period.'"); *In re Braune,* 385 B.R. 167, 171

6

(Bankr. N.D. Tex. 2008) ("[I]f no objection to confirmation is interposed, the plan may be confirmed whether or not it provides for full payment of creditors . . . ."); *In re Tracey*, 66 B.R. 63, 65 (Bankr. D. Md. 1986) ("Unlike the confirmation standards of § 1325(a), the ability-to-pay test may not be raised by the court *sua sponte* . . . .")  The provisions of § 1325(b), then, are not part of the "requirements" of § 1325(a) made applicable to plan modification under § 1329(b)(1).

The second reason the contrary decisions sometimes give is that § 1325(a)(1), one of the nine requirements adopted by § 1329(b)(1), requires that a plan "compl[y] with the provisions of this chapter."  Because § 1325(b) is a provision of Chapter 13, the argument continues, it must therefore apply to plan modification through § 1325(a)(1).  *See, e.g., King*, 2010 WL 4180625 at *5.  This argument presents a particularly difficult reading; if § 1329 were intended to be subject to all of Chapter 13, there would be no reason for it to specify only four discrete provisions of that chapter. *See In re Forbes*, 215 B.R. at 191(citing Keith M. Lundin, *Chapter 13 Bankruptcy* § 6.45, at 6-134 to 6-135 (2d ed. 1994)), for the observation that if § 1329(b)(1) actually incorporated all of the provisions of Chapter 13 through § 1325(a)(1), its other references to specific provisions of Chapter 13 would be redundant); *In re Hill*, 386 B.R. 670, 675 (Bankr. S.D. Ohio 2008) (same).   More fundamentally, though, and as noted above, § 1325(b) provides only for an objection to confirmation of a plan, not for an objection to plan modification under § 1329.  So even if § 1325(a)(1) made all of the relevant provisions of Chapter 13 applicable to § 1329 modification, § 1325(b) by its own terms would not be relevant.

3. *No absurdity results from the inapplicability of § 1325(b) to plan modification.*  One ground for not applying a statute according to its terms is that the application would be absurd.  *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (requiring

7

that plain statutory language be applied "at least where the disposition required by the text is not absurd"). Although there is authority holding to the contrary, *see In re Nahat*, 315 B.R. 368, 377 n.15 (Bankr. N.D. Tex. 2004), no absurdity results from allowing modification of a confirmed Chapter 13 plan without applying § 1325(b).

For the first several years in which Chapter 13 cases were administered under the Bankruptcy Code, there was no provision like § 1325(b) defining minimum payment amounts or minimum plan duration. The courts, however, had no difficulty in denying confirmation of Chapter 13 plans that proposed unreasonably low payment amounts or unreasonably short durations. From 1978, when Chapter 13 was adopted as part of the Bankruptcy Code, until 1984, when § 1325(b) was added, courts treated the amount of plan payments and the length of plan terms as matters governed by the requirement of § 1325(a)(3) that plans be proposed in good faith. For example, in *In re Rimgale*, 669 F.2d 426, 431 & n.14 (7th Cir. 1982), the Seventh Circuit held that the good faith requirement had a broad scope and cited *In re Kull*, 12 B.R. 654, 659 (S.D. Ga. 1981), as holding that among the factors relevant to the inquiry were "length of the proposed plan" and "size of payments relative to means available." *Accord, In re Polak,* 9 B.R. 502, 511 (W.D. Mich. 1981) ("If a plan is scheduled to last for 36 months . . . and the debtor is paying all that he can, then good faith is almost a certainty."). The enactment of § 1325(b) set out detailed standards for minimum plan payments and length, removing those factors from the good faith inquiry applicable to plan confirmation. *See In re Smith*, 848 F.2d 813, 820 n.8 (7th Cir. 1988). However, because plan modification was not made subject to § 1325(b), the good faith requirement continued to apply to modification of confirmed plans. *See In re Sunahara*, 326 B.R. at 781-82 (applying the good faith standard to determine the appropriate length of a proposed modified plan).

8

Indeed, in the context of plan modification, some standard beyond § 1325(b) is essential to govern payment amounts and plan length, because a debtor may wish to object to the payment terms or plan length proposed in modifications that other parties propose, and § 1325(b) only allows objections to terms in a plan proposed by the debtor. *See* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 255.1 at ¶ 7, http://www.ch13online.com (last visited Dec. 15, 2010) (Section 1325(b) cannot apply "when the proponent of the modification is the trustee or the holder of an allowed unsecured claim and the objecting party is the debtor . . . because § 1325(b) applies only upon objection to confirmation by 'the trustee or the holder of an allowed unsecured claim.'"). The good faith requirement of § 1325(a)(3) fills the gap that would otherwise exist, allowing all parties to object to inappropriate payment terms—whether excessive or inadequate—in a proposed modification. *See, e.g., In re Prieto*, No. 3:08-bk-3308-PMG, 2010 WL 3959610, at *3 (Bankr. M.D. Fla. Sept. 22, 2010) (applying § 1325(a)(3) to modified payment terms proposed by the trustee and objected to by the debtor).

The continued applicability of the good faith requirement to the payment amounts and plan length proposed in a modification of a Chapter 13 plan, regardless of the party proposing the modification, results in a procedure free from absurdity, while honoring Congress's decision not to make § 1325(b) part of the procedure.

B. *The application of § 1325(a) to Davis's proposed modification*

Because the requirements of § 1325(a), including good faith, unquestionably apply to proposed plan modifications, the trustee's objection to Davis's proposed modification must be assessed under those requirements.

The trustee contends that Davis's current income situation is likely to change—by new employment, marital reconciliation, or increased child support payments—and

9

that even if her income remains low, she should be required to make payments for the maximum sixty months, because her creditors will not be receiving the full payment that her plan proposed when confirmed. These objections may be relevant to the good faith inquiry under § 1325(a)(3), but they are not compelling. Future increases in Davis's income are far from certain, and the current expenses she lists in her amended Schedule J are reasonable—considerably lower, in fact, than the expenses that § 1325(b) would allow for confirmation of the plan of a debtor with above-median income under the applicable Internal Revenue Standards. Of course, the trustee is free to inquire as to any changes in the debtor's situation, informally or through Rule 2004 of the Federal Rules of Bankruptcy Procedure, and if the debtor's income increases, the trustee is free to seek a further modification of the debtor's plan. However, the plan payments currently proposed easily satisfy the good faith standard.

The same considerations bear on plan length. Until 2005, three years was generally the maximum term of a Chapter 13 plan; the term could be extended up to five years only on the debtor's request, with a showing of cause. *See* 11 U.S.C. § 1322(c) (1978); 11 U.S.C. § 1322(d) (1995). The 2005 amendments imposed a minimum five-year term on debtors with above-median incomes but retained the general three-year maximum for debtors with income below the applicable median. Since Davis's income is now below the applicable median, her proposed three-year plan term again meets the standard of good faith. And, once more, should her income situation change, the trustee would be able to seek a modification extending the plan term.

The trustee has not suggested any other failure of the debtor's proposed plan modification to comply with the requirements of § 1325(a), and the proposed modification appears to comply with all of them.

**Conclusion**

Because § 1325(b) does not apply to a motion to modify a confirmed Chapter 13 plan, and because the modification proposed here complies with all of the requirements that do apply, the debtor's motion to modify the plan is granted. An order was previously entered granting the motion in part, to reduce the plan payments. An order allowing the modification in full will be entered together with this opinion.

Dated: December 16, 2010

_____
Eugene R. Wedoff
United States Bankruptcy Judge